IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **BUFORD S. MANSELL,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CV-09-BE-1020-NW |
| | ) |
| **MICHAEL J. ASTRUE,** | ) |
| **Commissioner of the Social** | ) |
| **Security Administration,** | ) |
| | ) |
| **Defendant.** | ) |

**MEMORANDUM OPINION**

**I.  INTRODUCTION**

On July 20, 2006, the claimant, Buford Mansell, applied for supplemental security income under Title XVI of the Social Security Act. (R. 84).  The claimant alleges disability beginning on May 2, 2006, because of arthritis, back-pain, a personality disorder, and mental impairments. (R. 15).  The Commissioner denied the claim both initially and on reconsideration. The claimant filed a request for a hearing before an Administrative Law Judge, and the hearing was held on August 22, 2008. (R. 13).  In a decision issued on December 17, 2008, the ALJ found that the claimant was not disabled as defined by the Social Security Act and, thus, he was ineligible for supplemental security income. (R. 21).  The Appeals Council denied review of the ALJ's decision on April 17, 2009, and the ALJ's decision became the final decision of the Commissioner of the Social Security Administration. (R. 2).  The claimant has exhausted all of his administrative remedies, and this court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and

1383(c)(3). For the reasons stated below, this court affirms the decision of the Commissioner.

## II.  ISSUES PRESENTED

I.        Whether the new evidence of the claimant's WAS-III testing should warrant a remand pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of new and material evidence.

## III. STANDARD OF REVIEW

The standard for reviewing the Commissioner's decision is limited.  This court must affirm the Commissioner's decision if the Commissioner applied the correct legal standards and if the factual conclusions are supported by substantial evidence.  *See* 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997); *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

"No . . . presumption of validity attaches to the [Commissioner's] legal conclusions, including determination of the proper standards to be applied in evaluating claims."  *Walker*, 826 F.2d at 999.  This court does not review the Commissioner's factual determinations *de novo*. The court will affirm those factual determinations that are supported by substantial evidence. "Substantial evidence" is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The court must "scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] factual findings."  *Walker*, 826 F.2d at 999.  A reviewing court must not look only to those parts of the record that support the decision of the ALJ, but must view the record in its entirety and take account of the evidence that detracts from the evidence relied on by the ALJ.

*Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

## IV.  LEGAL STANDARD

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to disability benefits when the person cannot "engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 432 (d)(1)(A) (2004).  To make this determination, the Commissioner employs a five-step, sequential evaluation process:

> (1) Is the person presently unemployed;
> (2) Is the person's impairment severe;
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. pt. 404, subpt. P, app.1;
> (4) Is the person unable to perform his or her former occupation;
> (5) Is the person unable to perform any other work within the economy?
>
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to finding a disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986); 20 C.F.R. §§ 404.1520, 416.920.

Pursuant to the sixth sentence of § 405(g), the court may "at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such new evidence into the record in a prior proceeding." 42 U.S.C. § 405(g) (2010).  Where the claimant has introduced new evidence subsequent to the ALJ's determination, this court determines *de novo* whether to remand the case for consideration of the additional evidence. *Caulder v. Bowen*, 791 F.2d 872, 875 (11th Cir. 1986)(quoting *Cherry v. Heckler*, 760 F.2d

1186, 1194 (11th Cir. 1985)).

## V. FACTS

The claimant was forty-four years old at the time of the administrative hearing and has an eighth grade education. (R. 34). He stopped attending school because he had failed several grades and did not feel he could catch up. (R. 34). His past experience includes work as an iron worker, roofer, and drywall installer. (R. 50). The vocational expert, John McKinney, testified that the claimant's former jobs required medium to heavy exertional levels and were considered skilled. (R. 50).

The claimant's doctors' examinations have been extensive. The claimant suffers from problems related to a gunshot wound in 1986, arthritis, a history of bilateral carpal tunnel releases, bronchitis, migraines, a personality disorder, and alcohol and tobacco use. Claimant underwent surgery for his bilateral carpal tunnel and to repair gunshot wounds. Other disorders were controlled by doctors. (R. 169-73)[1]

On August 2, 2006, the claimant completed a physical activities questionnaire for Disability Determination Services (DDS). He noted that his daily activities included some driving and walking around his house. However, he also described that he was in constant pain while performing routine tasks. The claimant further stated that he could stand for 20 minutes; sit for 20 minutes; and walk for 20 minutes. (R. 119). He noted that his condition limited his ability to perform personal care tasks such as bathing, dressing, etc; however, he does not require assistance with these tasks. (R. 120). Further, he neither prepared meals nor assisted with

---

[1] Plaintiff's numerous doctors' visits for physical pain have been omitted for brevity because the issue on appeal relates to new evidence of his mental ability.

household chores because of pain. (R. 121). He reported that his condition limited his ability to drive because it caused him pain and that he was unable to load and unload groceries from the car. (R.123). A second daily activities questionnaire was completed on September 17, 2006, in which claimant stated the same problems. (R. 127).

On November 9, 2006, Dr. Richard Carter, M. D. of internal medicine, reviewed the claimant's medical records from Dr. Gillis, the original treating physician, at the request of DDS. The claimant complained of arthritis, sleep apnea, hip pain and shortness of breath. Dr. Carter opined that no evidence existed to support the allegation of sleep apnea. After reviewing the medical evidence and the claimant's report of his daily living activities, Dr. Carter further opined that the claimant's statements about his symptoms and functioning were only partially credible and not completely consistent with the objective findings. (R. 224).

On April 3, 2008, Dr. John Reinke, specializing in cardiology nuclear radiology, examined the claimant for chest pain and shortness of breath. The claimant reported that he smoked a pack of cigarettes a day but denied any alcohol use. Dr. Reinke noted no exam abnormalities. At the conclusion of the exam, a Adenosine Myoview (stress test) was scheduled, and Dr. Reinke reported that the claimant's walking is limited because of his back pain. (R. 326-27). On April 9, 2008, Dr. Reinke performed the Myoview and noted no EKG changes with Adenosine; the scans were consistent with normal stress tests; and the wall motion study showed normal left and right ventricular contractions. (R. 325).

On April 8, 2008, the claimant underwent nerve conduction study on his lower extremities at the request of Dr. J.A. Tomlinson, M. D.. The results were mildly suggestive of right lumbar radiography. Recommendations included clinical correlation, MRI of the lumbar

spine to rule out degenerative changes, physical therapy if degenerative changes are found, and needle EMG. (R. 315).

On September 18, 2008, consulting physician, Dr. Eston Norwood III, M. D. specializing in neurology, completed a medical source opinion. Dr. Norwood found no limitations in the claimant's ability to stand, walk, or sit. He further found that the claimant could lift and carry 20 lbs. constantly, 30 lbs. frequently, and 40 lbs. occasionally. (R. 352). In his notes, Dr. Norwood stated that he did not find an objective motor deficit and could not explain the claimant's allegation of his legs "going out."

*Mental Limitations*

On October 24, 2006, licensed psychologist Dr. Bonnie Atkinson, Ph.D., performed a consultative psychological evaluation on the claimant without testing and reviewed the claimant's medical records at the request of DDS. During the evaluation, Dr. Atkinson noted some hearing difficulties for the claimant. The claimant also told Dr. Atkinson that he drinks approximately 7-8 alcoholic drinks per day and that he has received treatment for his alcohol abuse. However, his last drink was 2 weeks prior to the exam. The claimant also stated that he had not smoked cannabis in 6 weeks. Regarding the claimant's psychological history, Dr. Atkinson noted three instances of hospitalization for alcohol, but the claimant denied any outpatient psychotherapy. (R. 182). The claimant stated that he quit school in the 8th grade and last worked as a roofer in 2006, but he left the job because of numbness in his hands. (R. 183).

Regarding the claimant's mental status, Dr. Atkinson opined that the claimant functioned in the average range, and she did not note any significant problems. (R.184). The claimant reported that he could dust, sweep, wash dishes, and prepare simple meals. He also reported the

ability to perform hygiene tasks independently.  Dr. Atkinson opined that the claimant possessed sufficient judgment to make acceptable work decisions and manage his own funds.  Dr. Atkinson noted the claimant's cannabis use and alcohol and nicotine dependence.  She also diagnosed him with an Axis II personality disorder and assigned the claimant a GAF of 60.  Dr. Atkinson concluded that the claimant was not severely mentally ill or retarded. (R. 185).

On November 6, 2006, DDS medical consultant Dr. Steven Dobbs, Ph. D., completed a psychiatric review technique.  He noted that a residual functional capacity assessment was necessary based on the claimant's diagnosis of personality disorder. (R. 188).  He also noted alcohol and drug abuse. (R. 196).  Dr. Dobbs found marked limitations in the claimant's ability to maintain concentration, persistence, and pace. (R. 198).  In a second psychiatric review technique, Dr. Dobbs noted the claimant's personality disorder.  Dr. Dobbs found mild restrictions related to activities of daily living; moderate difficulties maintaining social functioning; mild difficulties maintaining concentration, pace, or persistence; and no episodes of decompensation. (R. 212). Dr. Dobbs opined that any allegation of a mental disability would not be supported by great weight. (R. 214).

Dr. Dobbs also completed two mental residual functional capacity forms for the claimant on November 6, 2006.  Regarding the category of substance abuse disorder, Dr. Dobbs found marked limitations in the claimant's ability to carry out detailed instructions, his ability to maintain attention and concentration for extended periods, his ability to perform scheduled activities and be punctual with customary tolerances, and in his ability to complete a normal workweek without interruptions from his psychological symptoms. (R. 216-17).  Regarding the category of personality disorder, Dr. Dobbs found moderate limitations in the claimant's ability

to interact with the public, his ability to accept instructions and respond to criticism, and his ability to get along with coworkers without distracting them. Otherwise, Dr. Dobbs noted no significant limitations. (R. 220-21).

On September 19, 2008, adult and forensic psychiatrist Dr. Gagandeep Dhaliwal, M. D., completed a consultive psychiatric examination report for the claimant. The psychiatric examination showed only mild to moderate limitations in the claimant's abilities. He also opined that the claimant could manage benefits in his own best interest. Dr. Dhaliwal further found that based on the review of the records, the claimant's limitations would change if his substance abuse stopped. (R. 333-34). Dr. Dhaliwal diagnosed the claimant with Axis I diagnoses of alcohol dependence, anxiety disorder, and ruled out substance induced mood disorder. His Axis II diagnosis included personality disorder. Dr. Dhaliwal assigned the claimant a GAF of 65. (R. 349).

*ALJ Hearing*

After the Commissioner denied the claimant's request for supplemental security income, the claimant requested and received a hearing before an ALJ. (R. 31). At the hearing, the claimant stated that he had an eighth grade education but quit because he felt he could not make up the failed years. The claimant explained that he did not serve in the military because of his limited education. (R. 34). He also denied any current work and stated that he last looked for a job over two years ago. The claimant stated that he retained the ability to drive. He also testified that he smoked about half a pack of cigarettes per day but denied any significant alcohol consumption in the previous two years. (R. 36).

The claimant stated that he was unable to work because of back problems, arthritis, and

problems with his hands and feet.  He also testified that he was shot in his early 20s.  The claimant stated that his daily activities included watching TV with occasional household chores such as sweeping.  He stated that he could walk around the block and sit and stand for 25 minutes. (R. 37).  The claimant further testified that he could lift a case of Coca-Cola, a gallon of milk, and a twenty pound bag of oranges. (R. 39).  He also stated that he had carpal tunnel surgery, but the surgery did not significantly relieve his pain.

  Upon questioning by his attorney, the claimant stated that he no longer received shots for his back pain but that his physician gave him prescription medication for the pain.  He further testified that he had no money for medical treatment.  The attorney inquired as to the claimant's ability to purchase a $4.00 pack of cigarettes, and the claimant responded that his friends bought him the cigarettes.  Regarding his daily activities, the claimant stated that he mostly watched TV and only bathed two times per week because of his limitations.  The claimant further testified that he sometimes fishes off the bank, but he and his wife both carried the tackle box. He also stated that he helps with his son's baseball team and is able to throw the ball. (R. 43).  However, the claimant testified that he had problems bending, crouching, moving, and stooping because of the effects from the gunshot. (R. 47).  Upon re-examination by the ALJ, the claimant stated that he drives his wife to the grocery store but does not go inside because of problems with his arms and legs. (R. 48).

  Next, the ALJ questioned the vocational expert, John McKinney. Mr. McKinney testified to the claimant's previous work history including an iron worker, roofer, and a drywall installer. Mr. McKinney further testified that two of the claimant's previous jobs involved heavy, skilled tasks. (R. 50).  The ALJ then asked Mr. McKinney to consider job possibilities for a hypothetical

9

claimant with the following limitations: claimant's age, education, prior work history, ability to perform light work, a sit/stand option; occasional balancing, stooping, kneeling, crouching, and climbing stairs; no work with ladders, scaffolds, ropes, or around hazardous machinery and unprotected heights; limited to simple, repetitive tasks; occasional interaction with others, and low stress. (R. 51-53). Given the hypothetical situation, Mr. McKinney opined that the claimant could not perform his previous work, but he would be able to perform other jobs available in the economy. Such available jobs included a production inspector, a garment folder, and hand packager. (R. 53).

*ALJ Decision*

In a decision dated December 17, 2008, the ALJ found the claimant not disabled. (R. 21). The ALJ found that the claimant had not engaged in substantial gainful activity since May 9, 2006, the date of application. The ALJ acknowledged the claimant's severe impairments of arthritis, history of bilateral carpal tunnel releases, personality disorder, and alcohol and tobacco abuse. The ALJ further found that none of the claimant's impairments taken individually or in combination met the Listing of Impairments. (R. 15).

The ALJ concluded that the claimant retained the residual functional capacity (RFC) to perform light work with a sit/stand option. He further limited the claimant to occasional crouching, stooping, kneeling, and climbing stairs. The ALJ found that the claimant should not use ladders, ropes, or scaffolding because of his trembling hands, but he could use his hands for handling, pushing, and pulling for two-thirds of the day. Mentally, the job should include simple, routine, repetitive tasks that require simple decisions and occasional interaction with the public and should be low stress. (R. 16).

In making his determination that the claimant possessed the RFC to perform light work, the ALJ first applied the Eleventh Circuit's pain standard. The ALJ found that the claimant's medically determinable impairments of back pain, arthritis in hands and feet, gunshot wound, poor memory, and inability to understand could reasonably be expected to cause the alleged symptoms. However, after hearing the claimant's subjective allegations as to the intensity, persistence, and limiting effects of his symptoms in light of the medical record, the ALJ determined that the claimant was not credible to the extent that his subjective allegations were inconsistent with the RFC.

The claimant alleged that he only bathes about twice per week, he did some chores but was unable to do anything for long periods of time, he can sit and stand for only 15 minutes at a time, and has trouble lifting because of arthritis. However, at the hearing, he testified that he fishes, helps with chores, and assists his son's baseball team. The ALJ found that the ability to perform these tasks was inconsistent with the claimant's subjective limitations. (R. 17).

The ALJ also found the claimant's allegation of a mental disability to be without merit. He reasoned that the claimant had not received any treatment at a mental health facility and Dr. Atkinson's 2006 consultative psychological evaluation failed to support the claimant's allegation. In Dr. Atkinson's report, she diagnosed the claimant with personality disorder and a history of drug use. Alcohol and nicotine dependence were also noted. Dr. Atkinson assigned the claimant a GAF of 60, which according to the DSM-IV, is consistent with only moderate limitations. The ALJ found that a psychological evaluation of the claimant by Dr. Dhaliwal in 2008 was consistent with Dr. Atkinson's findings in 2006. Thus, the ALJ concluded that the claimant was not significantly limited in his mental abilities. (R. 17).

The ALJ next determined whether the claimant's substance abuse was material to his disability.  The ALJ referred to the opinions of the state agency, Dr. Atkinson, and Dr. Dhaliwal, which found that the claimant was only moderately limited in his mental functioning.  The ALJ further reasoned that the opinions of Dr. Atkinson and Dr. Dhaliwal were supported by the daily activities reported by the claimant. (R. 18-19).

The ALJ concluded that the claimant was unable to perform his past relevant work, but he retained the RFC to perform jobs that exist in significant numbers in the economy.  To support his conclusion, the ALJ referenced the vocational expert.  The VE testified that given the claimant's age, education, work experience, and RFC, the claimant would be able to perform jobs such as product inspector, garment folder, and hand packager.  Therefore, the ALJ concluded that the claimant was not disabled as defined by the Social Security Act. (R. 20).

## DISCUSSION

**A.  Whether the new evidence of the claimant's WAS-III testing should warrant a remand pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of new and material evidence.**

Claimant argues that the ALJ decision should be remanded for consideration of new material evidence.  The new evidence suggested by the claimant is a vocational report provided by Dr. James Crowder, Ph.D, performed ten months after the hearing decision and six months after the Appeals Council denied the claimant's request for review.  Claimant contends that the IQ evaluation performed by Dr. Crowder combined with the ALJ's findings of severe impairments demonstrate a combination of physical and mental impairments that meet the requirements of listing 12.05C.

The Social Security Act at Sentence Six of 42 U.S.C. § 405(g) provides that a reviewing court may ". . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such new evidence into the record in a prior proceeding."

To prevail on his argument for remand, the claimant must prove, "(1) there is new, non-cumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for the failure to submit the evidence at the administrative level." *Vega*, 265 F.3d at 1218 (quoting *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986).

Claimant contends that the vocational report by Dr. Crowder is both new and non-cumulative. Dr. Crowder reported that the claimant's full scale GAF is 65. This finding is consistent with Dr. Dhaliwal's finding of Claimant's GAF to be 65 in 2008. Dr. Dhaliwal's psychiatric findings showed only mild to moderate limitations in the claimant's abilities. Dr. Atkinson previously reported a lower GAF with a finding of 60 in 2006. Dr. Atkinson found that the claimant functioned in the average range, and she did not note any significant problems, even with her finding of a lower GAF. She concluded that the claimant was not severely mentally ill or retarded. Further, the claimant was examined by Dr. Steven Dobbs, who opined that any allegation of a mental disability would not have great support. Dr. Dobbs found that the claimant had moderate limitations but found no significant limitations.

The non-cumulative requirement is satisfied by the production of new evidence that was not contained in the administrative record. *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir.

1988). The report by Dr. Crowder is "new" in the sense that Dr. Crowder had not previously examined the claimant. However, the information contained within the report is based on the same findings presented to the ALJ in the hearing. "Not every discovery of new evidence, even if relevant and probative, will justify a remand to the [Commissioner], for some evidence is of limited value and insufficient to justify the administrative costs and delay of a new hearing." *Caulder*, 791 F.2d at 876-877. Dr. Crowder's conclusion is based on the same findings and would not add value to the decision.

   Dr. Crowder's report also is consistent with the mental and vocational findings presented to the ALJ. The evidence merely restates a GAF previously presented by Dr. Dhaliwal. Further, Dr. Crowder's opinion that the claimant suffers a mild mental retardation would not be entitled to the deference of a treating source because Dr. Crowder only examined claimant once. *See McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) (opinions by one-time examiners were not entitled to the same deference as opinions by treating physicians). Therefore, the evidence provided within the new report is cumulative of the evidence already provided to the ALJ.

   The second requirement for new evidence is that the evidence presented must be material to the decision. Evidence is material if a reasonable possibility exists that the new evidence would change the administrative result. *Fagle v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). Dr. Crowder's findings are so similar to the original mental examinations that little expectation exists of the new evidence changing the administrative result. Although Dr. Crowder reports that the claimant's mental abilities, combined with his physical limitations would be disabling, his opinion is based on the same underlying findings and facts used by Dr. Dhaliwal and Dr. Atkinson, who both found that the claimant's mental abilities caused only moderate impairment.

It is the responsibility of the ALJ to consider the doctors' opinions when determining disability. Disability is not for any one doctor to conclude. Therefore, the actual psychiatric findings by Dr. Crowder would not be material to the decision because they are substantially similar to the psychiatric findings presented to the ALJ.

Lastly, for new evidence to be submitted, good cause must exist for the failure to submit the evidence at the administrative level. *Cannon*, 858 F.2d 1546. When the claimant could have obtained the evidence earlier, the good cause requirement is not satisfied. *Fagle*, 150 F.3d at 1323 (although physician's report was prepared after the ALJ's hearing, the opinions set out in the report appeared to have been based on medical examinations and tests conducted before the ALJ rendered his decision). Claimant's counsel does not give reasons why Dr. Crowder had not previously examined the claimant other than alluding to the fact that the claimant's previous counsel should have used Dr. Crowder for an examination. Whether the claimant's previous counsel "should have" used Dr. Crowder is not an issue for this court because the new evidence is cumulative. Moreover, Dr. Crowder's report is not material evidence that could change the outcome of the decision. No truly new information is contained within the report; therefore, it would not add anything new for examination and claimant fails to meet his burden for remand.

## CONCLUSION

For the reasons stated above, the evidence presented by the claimant does not warrant a remand pursuant to sentence six of 42 U.S.C. § 405(g) for consideration of new and material

evidence.  The court concludes that the decision of the Commissioner should be AFFIRMED.

DONE and ORDERED this 27th day of September 2010.

_____
KARON OWEN BOWDRE
UNITED STATES DISTRICT JUDGE